UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS BALDWIN,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>JACOB CUTTINTG et al.,<br><br>　　　　　　　　　　Defendants. | Case No.: 3:16-cv-903-L-KSC<br><br>**ORDER DENYING MOTIONS TO DISMISS AND ORDER TO SHOW CAUSE** |

Pending before the Court in this civil rights action are Defendants' motions to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Rule 12(b)(6). (Docs. no. 6 & 8.) The motions are fully briefed. They are submitted on the briefs and without oral argument pursuant to Civil Local Rule 7.1.d.1. For the reasons which follow, both motions are denied without prejudice.

**I.     BACKGROUND**

According to the allegations in the complaint, Plaintiff is employed by the United States Border Patrol ("Border Patrol"). In the course of his employment, he befriended San Diego County Sheriff's Deputy Jessica Leon. Subsequently, Leon's relative David William Centrone became a suspect in an investigation of the West Coast Crips, commenced by the East County Gang Task Force ("Task Force"). The Task Force

believed that Leon provided sensitive law enforcement information to Centrone.  They tapped her mobile phone.

Because of the wiretap, the Task Force members were able to read text messages exchanged between Plaintiff and Leon, including about Plaintiff's romantic relationship with San Diego County Sheriff's Deputy Sharlene Wilson.  The messages made disparaging remarks about the Task Force investigation, the competency of the officers involved, Plaintiff's plans to apply for a job with the San Diego County Sheriff's Department, and about Defendant Jacob Cutting, El Cajon Police Department SWAT officer and Wilson's former husband.

In 2014, Defendants Kai Mandelleh, El Cajon Police Department SWAT officer, and Zeath Sanchez, San Diego County Deputy Sheriff, both detectives with the Task Force, investigated Plaintiff's association with Leon.  They believed that Leon sought to extract law enforcement sensitive information from Plaintiff.  They called Plaintiff for an interview.  He claims that although the Task Force considered him a suspect, they treated him as a witness, because it afforded fewer procedural protections.  The interview was recorded.  The questions did not relate to leaking sensitive information to Leon, but to Plaintiff's relationship with Wilson.  The Task Force concluded that Plaintiff did not pass sensitive law enforcement information to Leon.  Plaintiff claims the suspicion was unreasonable to begin with and contrary to evidence, because he had no contact with Task Force members during the relevant time.

After the interview, the Task Force informed the Border Patrol, Plaintiff's employer, that he had been questioned for associating with Leon, but was uncooperative and not forthcoming with information.  Border Patrol opened an internal investigation.  Although Plaintiff's interview with Mandelleh and Sanchez was recorded, the Task Force refused to provide the recording to the Border Patrol for its investigation.  Plaintiff denies that he was uncooperative or less than forthcoming with information.

Plaintiff alleges that Defendants conspired to pursue unfounded allegations against him and passed them to the Border Patrol because Cutting believed it would precipitate

the termination of Plaintiff's relationship with Wilson.  In pursuit of this goal, Plaintiff alleges that Defendants intentionally circumvented his constitutional due process rights and rights under federal labor laws.

Plaintiff claims that Defendants' false allegations about him caused damage to his professional reputation and career prospects.  He believes the allegations were made in retaliation by Cutting, who was jealous, and by Sanchez for pointing out to him he had made an error in collecting evidence.

As a result of this conduct, Plaintiff claims he was removed from the United States Marshal's San Diego Regional Fugitive Task Force, and would not be assigned to another task force.  Plaintiff was informed by his superior that the San Diego Sheriff's Department considered him untrustworthy.  Because the Sheriff's Department was a partner in most local task forces, Plaintiff would no longer be assigned.  Furthermore, Plaintiff's duties with the Border Patrol were downgraded, and he was passed over for promotion.  Plaintiff alleges that because a perjury allegation had been made against him, he is also no longer able to pursue a state law enforcement career or testify as an agent in federal court.  Although Plaintiff was able to secure a position as a Criminal Investigator with Immigration and Customs Enforcement, his acceptance was delayed pending the conclusion of Border Patrol's internal investigation.  He is pursuing a grievance through the National Border Patrol Council.

Plaintiff filed a complaint against Cutting, Mandelleh and Sanchez alleging violation of his constitutional due process rights under 42 U.S.C. §1983, conspiracy to deny him due process under 42 U.S.C. §1985, and conspiracy to interfere with federal officer's duties under 42 U.S.C. §1985(1).  Defendants filed motions to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, and Rule 12(b)(6) for failure to state a claim.

The Court first turns to Defendants' Rule 12(b)(1) motions for lack of subject matter jurisdiction.  Unlike State courts,

> Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree.  It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Federal courts are constitutionally required to raise issues related to federal subject matter jurisdiction and may do so *sua sponte*. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).  They must satisfy themselves of jurisdiction over the subject matter before proceeding to the merits of the case. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577, 583 (1999).

Defendants argue the Court lacks subject matter jurisdiction because Plaintiff's claims are preempted by the Civil Service Reform Act, 5 U.S.C. §1101 *et seq.* ("CSRA").[1]  "The CSRA established a comprehensive system for reviewing personnel actions taken against federal employees." *United States v. Fausto*, 484 U.S. 439, 455 (1988).  "If the challenged conduct falls within the scope of the CSRA's prohibited

---

[1] Defendants argue that the second and third causes of action, alleged under 42 U.S.C. §§1985 and 1985(1), are preempted.  They do not mention the first cause of action under 42 U.S.C. §1983, and provide no reason why it should not be subject to preemption to the same extent.  Section 1983 claims are analogous to *Bivens* claims. Like §1983 claims, *Bivens* claims provide a remedy for violation of federal constitutional rights, albeit for violations by federal governmental actors as opposed to state actors.  The bodies of law pertaining to *Bivens* and §1983 actions have been largely assimilated.  *See Pollard v. the GEO Group, Inc.*, 629 F.3d 843, 855 (9th Cir. 2010) (collecting cases), *rev'd on other grounds, Minneci v. Pollard*, 565 U.S. 118 (2012).  *Bivens* claims are subject to CSRA preemption.  *See, e.g., Saul v. United States*, 928 F.2d 829, 834 (9th Cir. 1991) (*Bivens* claim for unlawful search and seizure of personal mail at place of employment).  As the parties present no reason to treat the §1983 claim differently than the §1985 claims, and in light of the Court's duty to raise *sua sponte* issues of subject matter jurisdiction, *Arbaugh*, 546 U.S. at 514, the Court includes Plaintiff's §1983 claim in the preemption analysis.

personnel practices, then the CSRA's administrative procedures are the employee's only remedy." *Mangano v. United States*, 529 F.3d 1243, 1246 (9th Cir. 2008) (internal quotation marks, citations, and brackets omitted); *see also Collins v. Bender*, 195 F.3d 1076, 1080 (9th Cir. 1999). The CSRA precludes federal court jurisdiction except as expressly provided in 5 U.S.C. §7702(a)(1)(B) for actions alleging adverse employment action based on discrimination, which does not apply here. *See Elgin v. Dept. of the Treasury,* 567 U.S. 1, __, 132 S. Ct. 2126, 2134 (2012). Preemption applies even when the CSRA provides the employee with no remedy. *Orsay v. U.S. Dep't of Justice*, 289 F.3d 1125, 1128-29 (9th Cir. 2002), abrogated on other grounds by *Millbrook v. U.S.,* __ U.S. __; 113 S. Ct. 1441 (2013).

The CSRA preempts claims "if the conduct underlying [the] complaint can be challenged as 'prohibited personnel practices' within the meaning of the CSRA." *Mangano*, 529 F.3d at 1247. "The CSRA defines 'prohibited personnel practices' as any 'personnel action' taken by someone in authority that violates one of ... enumerated practices. 'Personnel action,' in turn, is defined comprehensively ... ." *Id.* (citing 5 U.S.C. § 2302(b) for "personnel practices" and 5 U.S.C. § 2302(a)(2)(A) for "personnel action"). The CSRA also includes a list of prohibited reasons for taking a personnel action. *Orsay,* 289 F.3d at 1129 (citing 5 U.S.C. §2302(b)). Even if the prohibited reason for the conduct at issue is not the primary reason for the personnel action, it is sufficient if it is "implicit" in the complaint. *Orsay,* 289 F.3d at 1129.

The CSRA provisions regarding personnel actions contain "broad language," and Ninth Circuit case law gives it an "inclusive construction." *Orsay,* 289 F.3d at 1129. When the claim falls within its broad ambit, the CSRA preempts constitutional, federal statutory, and tort claims. *See, e.g., Mangano*, 529 F.3d at 1247 (infliction of emotional distress, intentional interference with right to practice chosen profession, abuse of process); *Orsay,* 289 F.3d at 1129-32 (Privacy Act claim under 5 U.S.C. §552a); *Saul*, 928 F.2d at 834 (*Bivens* claim for unlawful search and seizure of personal mail).

The CSRA does not preempt federal claims involving conduct that does not fall within one of its categories of personnel action.  *Brock v. United States*, 64 F.3d 1421, 1424-25 (9th Cir. 1995).  Although there are limits, "the instances are well outside anything that could reasonably be described as a 'personnel action.'"  *Mangano*, 529 F.3d at 1247.  For example, wiretapping, warrantless searches, or uncompensated takings, *Bush v. Lucas,* 462 U.S. 367, 386 n.28 (1983), aiming a loaded weapon, *Orsay,* 289 F.3d at 1129, rape and sexual assault, *Brock*, 64 F.3d at 1424-25, or warrantless search of the employee's home, *Collins*, 195 F.3d at 1079-80, fall outside the scope of CSRA's definition of "personnel action."

The fact that, like here, the plaintiff complains about the conduct of third parties, none of whom are his employer or supervisor, does not change the analysis.  "The CSRA contains no specific requirement that the employee engaged in the prohibited personnel practice be an employee of the organization that employs the employee subject to the adverse personnel determination."  *Orsay,* 289 F.3d at 1131.

In sum, the CSRA preempts Plaintiff's claims "if the conduct underlying his complaint can be challenged as 'prohibited personnel practices' within the meaning of the CSRA."  *Mangano*, 529 F.3d at 1247.  Neither party addresses this issue by considering the CSRA definitions of "personnel practice" and "personnel action" as required by Ninth Circuit precedent.  Accordingly, Defendants' respective Rule 12(b)(1) motions are denied without prejudice.

Alternatively, Defendants contend that Plaintiff fails to state a claim for any of his causes of action.  A federal court may not assume "hypothetical jurisdiction" that would enable it to "resolve contested questions of law when its jurisdiction is in doubt. Hypothetical jurisdiction produces nothing more than a hypothetical judgment -- which comes to the same thing as an advisory opinion . . . ."  *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 101 (1998).  Because subject matter jurisdiction is doubtful, Defendants' respective Rule 12(b)(6) motions are denied.  Denial is without prejudice to

presenting the same arguments again in a Rule 12(c) or Rule 56 motion, after the parties have appropriately addressed subject matter jurisdiction.

For the foregoing reasons, **IT IS ORDERED** as follows:

1. Defendants' motions to dismiss are denied without prejudice.

2. No later than **April 21, 2017**, Plaintiff shall file a brief to **SHOW CAUSE** why this action should not be dismissed for lack of subject matter jurisdiction. Failure to timely comply with this order may result in dismissal without prejudice.

3. Defendants shall file a response, if any, no later than **May 5, 2017**.

**IT IS SO ORDERED.**

Dated:  March 27, 2017

_____
Hon. M. James Lorenz
United States District Judge