UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS BALDWIN,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>JACOB CUTTINTG et al.,<br><br>　　　　　　　　Defendants. | Case No.: 3:16-cv-903-L-KSC<br><br>**ORDER REGARDING SUBJECT MATTER JURISDICTION** |

In this civil rights action, Defendants filed motions to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Rule 12(b)(6). (Docs. no. 6 & 8.) The Court issued an order to show cause ("OSC") why the action should not be dismissed as preempted by the Civil Service Reform Act, 5 U.S.C. §1101 *et seq.* ("CSRA"), and denied the motions without prejudice pending briefing on the OSC. (Doc. no. 18.) The Court finds the CSRA does not preempt this action.

**I.　BACKGROUND**

According to the allegations in the complaint, Plaintiff was employed by the United States Border Patrol ("Border Patrol"). In the course of his employment, he befriended San Diego County Sheriff's Deputy Jessica Leon. Leon's relative David William Centrone became a suspect in an investigation of the West Coast Crips,

1

commenced by the East County Gang Task Force ("Task Force"). The Task Force believed that Leon provided sensitive law enforcement information to Centrone. They tapped her mobile phone.

Because of the wiretap, the Task Force members were able to read text messages exchanged between Plaintiff and Leon. In 2014, Defendants Kai Mandelleh, El Cajon Police Department SWAT officer, and Zeath Sanchez, San Diego County Deputy Sheriff, both detectives with the Task Force, investigated Plaintiff's association with Leon. They believed that Leon sought to extract law enforcement sensitive information from Plaintiff. Plaintiff contends the suspicion was unreasonable to begin with and contrary to evidence, because he had no contact with Task Force members during the relevant time. Instead, he claims, that the investigation, including his interview, was in retaliation for Plaintiff's disparaging text messages about the Task Force investigation, the competency of the officers involved, and Defendant Jacob Cutting, El Cajon Police Department SWAT officer and former husband of Plaintiff's lover San Diego County Sheriff's Deputy Sharlene Wilson. The interview did not relate to leaking sensitive information to Leon, but to Plaintiff's romantic relationship with Wilson.

The Task Force ultimately concluded that Plaintiff did not pass sensitive law enforcement information to Leon, but nevertheless informed the Border Patrol, Plaintiff's employer, that Plaintiff had been questioned for associating with Leon and was uncooperative. Border Patrol opened an internal investigation. Although Plaintiff's interview was recorded, the Task Force refused to provide the Border Patrol with the recording to corroborate Plaintiff's contention that he cooperated.

Plaintiff contends that by pursuing unfounded allegations against him and passing false information to the Border Patrol, Defendants intentionally circumvented his constitutional rights for purposes of retaliation by Cutting, who was jealous, and Sanchez, for criticizing him for an error in collecting evidence. Plaintiff claims Defendants' conduct caused him physical, mental and emotional injury requiring medical leave and mental health treatment.

Plaintiff also complains that Defendants' false reports to the Border Patrol damaged his employment opportunities. Plaintiff was removed from the United States Marshal's San Diego Regional Fugitive Task Force. His superiors informed him of a Border Patrol policy to remove an agent from a task force upon request from a member of any of the other participating agencies, that he was removed without an internal investigation, and would not be allowed to apply for assignment to other task forces, because San Diego Sheriff's Department was a partner in most of them. Before conclusion of an internal investigation, Plaintiff was reassigned to the Border Patrol Imperial Beach station, his duties were downgraded, and he was turned down for multiple other assignments. Although Plaintiff ultimately secured a position as a criminal investigator with Immigration and Customs Enforcement, his acceptance was delayed pending the conclusion of Border Patrol's internal investigation. He is pursuing a grievance through the National Border Patrol Council.

Plaintiff filed the pending action against Cutting, Mandelleh and Sanchez alleging violation of his constitutional rights under 42 U.S.C. §1983, conspiracy to deny him due process under 42 U.S.C. §1985, and conspiracy to interfere with federal officer's duties under 42 U.S.C. §1985(1). Defendants filed a motion to dismiss arguing, among other things, that the Court lacks subject matter jurisdiction because Plaintiff's claims are preempted by the CSRA. The issue was not adequately briefed, and in light of the Court's duty to satisfy itself of the subject matter jurisdiction before proceeding to the merits, *see Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577, 583 (1999), the Court issued the OSC. If the CSRA applies, it preempts all of Plaintiff's claims.

## II. DISCUSSION

"The CSRA established a comprehensive system for reviewing personnel action taken against federal employees." *Elgin v. Dept. of the Treasury,* 567 U.S. 1, __, 132 S. Ct. 2126, 2130 (2012) (internal citation and quotation marks omitted). "Congress intended the CSRA to be the sole mechanism through which employment disputes are

settled." *Collins v. Bender,* 195 F.3d 1076, 1080 (9th Cir. 1999). Where it applies, its administrative procedures preempt federal court jurisdiction. *Mangano v. United States*, 529 F.3d 1243, 1246 (9th Cir. 2008) (internal quotation marks, citations, and brackets omitted); *Elgin,* 132 S. Ct. at 2134. Preemption applies even if it leaves the employee without a remedy. *Orsay v. U.S. Dep't of Justice*, 289 F.3d 1125, 1128-29 (9th Cir. 2002), abrogated on other grounds by *Millbrook v. U.S.,* __ U.S. __; 113 S.Ct. 1441 (2013).

CSRA applies if the conduct underlying the complaint can be challenged as a prohibited personnel practice. *Mangano*, 529 F.3d at 1247. "The CSRA defines 'prohibited personnel practices' as any 'personnel action' taken by someone in authority that violates one of ... enumerated practices. 'Personnel action,' in turn, is defined comprehensively ... ." *Id.* (citing 5 U.S.C. § 2302(b) for "personnel practices" and 5 U.S.C. § 2302(a)(2)(A) for "personnel action"); *see also Orsay,* 289 F.3d at 1129 (CSRA provisions regarding personnel actions contain "broad language," and Ninth Circuit case law gives it an "inclusive construction"). Personnel practices are prohibited reasons for taking personnel actions. *Orsay,* 289 F.3d at 1129 (citing 5 U.S.C. §2302(b)). Even if a prohibited reason for the conduct at issue is not the primary reason for the personnel action, it is sufficient if it is "implicit" in the complaint. *Id.* When a claim falls within its broad ambit, the CSRA preempts constitutional, statutory, and tort claims. *See, e.g., Mangano*, 529 F.3d at 1247 (infliction of emotional distress, intentional interference with right to practice chosen profession, abuse of process); *Orsay,* 289 F.3d at 1129-32 (Privacy Act claim under 5 U.S.C. §552a); *Saul*, 928 F.2d at 834 (*Bivens* claim for unlawful search and seizure of personal mail).

The fact that a plaintiff complains about the conduct of third parties rather than his employer or supervisor, does not necessarily change the analysis. This issue was addressed in *Orsay*, where other defendants were named in addition to the plaintiff's employer:

4

3:16-cv-903-L-KSC

> The CSRA reaches "prohibited personnel practices" by "*[a]ny employee* who has authority to take, recommend, or approve any personnel action" "with respect to an employee in ... a covered position in an agency." 5 U.S.C. § 2302(a)(2)(A) & (b) (emphasis added). The CSRA contains no specific requirement that the employee that engaged in the prohibited personnel practice be an employee of the organization that employs the employee subject to the adverse personnel determination.

*Orsay,* 289 F.3d at 1131. For purposes of the CSRA, "any employee" is a federal employee. *See id.* § 2105.

However, the CSRA does not preempt federal claims involving conduct that does not fall within one of its broadly construed categories of personnel action. *Brock v. United States*, 64 F.3d 1421, 1424-25 (9th Cir. 1995); *see also Orsay*, 289 F.3d at 1131 (CSRA preemption applies when "the underlying conduct ... involve[s] a 'personnel action'."). For example, wiretapping, warrantless searches, or uncompensated takings, *Bush v. Lucas,* 462 U.S. 367, 386 n.28 (1983), aiming a loaded weapon, *Orsay,* 289 F.3d at 1129, rape and sexual assault, *Brock*, 64 F.3d at 1424-25, or warrantless search of the employee's home, *Collins*, 195 F.3d at 1079-80, fall outside the CSRA's broad scope.

In large part, Plaintiff complains about the actions taken by the Border Patrol, his employer, in response to Defendants' alleged unconstitutional conduct. Plaintiff was removed from the U. S. Marshals San Diego Regional Fugitive Task Force and denied other employment opportunities. (Compl. at 16; *see also id.* ("damages include, but are not limited to: being transferred off the U.S. Marshals San Diego Regional Fugitive Task Force, deprivation of other prestigious assignments, an inability to laterally transfer to other agencies, a potential compromise of ability to pass regular required background checks, and the loss of overtime opportunities.") To the extent Plaintiff complains about Border Patrol's actions, the allegations fall within several categories of "personnel action" under the CSRA -- "transfer or reassignment" under 5 U.S.C. §2302(a)(2)(A)(iv), "decision concerning pay, benefits or awards" under §2302(a)(2)(A)(ix), and "any other significant change in duties, responsibilities, or working conditions" under

§2302(a)(2)(A)(xii).  They also fall within "prohibited personnel practices" -- "willfully obstruct any person in respect to such person's right to compete for employment" under §2302(b)(4); "discriminate ... against an employee ... on the basis of conduct which does not adversely affect the performance of the employee" under §2302(b)(10); and "personnel action [which violates] the merit system principles" under §2302(b)(12). [1]

However, the Border Patrol is not a named Defendant.  None of the named Defendants are federal employees with authority to take any employment action as to Plaintiff.  (*See* Compl. at 2-3.)  Plaintiff complains he was investigated and questioned by Defendants ostensibly because he was suspected of leaking sensitive information about a local law enforcement operation.  In reality, he alleges, he was investigated and questioned for private reasons -- to interfere in his romantic relationship, and get even for criticizing Sanchez.  Under either scenario, the connection between Defendants' conduct and Plaintiff's employment is highly attenuated.  *See Collins*, 195 F.3d at 1079.  Defendants were not federal employees, and their conduct occurred outside Plaintiff's workplace for non-work related reasons.  Defendants' conduct therefore falls outside the broad scope of "personnel action" and "personnel practice" as defined in the CSRA.

For the foregoing reasons, Plaintiff's claims are not preempted by the CSRA.

IT IS SO ORDERED.

Dated:  May 22, 2017

Hon. M. James Lorenz
United States District Judge

---

[1] The merit system principles include "fair and equitable treatment" of employees, including "proper regard for their ... constitutional rights," and protection of employees "against arbitrary action."  5 U.S.C. §2301(b)(2)&(8)(A).