UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS BALDWIN,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>JACOB CUTTING et al.,<br><br>　　　　　　　　　Defendants. | Civil No.: 3:16-CV-903-L-KSC<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS** |

Pending before the Court in this civil rights action are Defendants' motions to dismiss for failure to state a claim under FRCP 12(b)(6). (Docs. no. 24 & 25.) The motions are fully briefed. They are submitted on the briefs without oral argument pursuant to Civil Local Rule 7.1.d.1. For the reasons which follow, Defendants' motions to dismiss are granted with leave to amend.

**I.　Background**

According to the allegations in the complaint, Plaintiff is employed by the United States Border Patrol ("Border Patrol"). In the course of his employment, he befriended San Diego County Sheriff's Deputy Jessica Leon. Subsequently, Leon's relative David William Centrone became a suspect in an investigation of the West Coast Crips,

commenced by the East County Gang Task Force ("ECG Task Force"). The ECG Task Force believed that Leon provided sensitive law enforcement information to Centrone. They tapped her mobile phone.

Because of the wiretap, the ECG Task Force members were able to read text messages exchanged between Plaintiff and Leon, including messages about Plaintiff's romantic relationship with San Diego County Sheriff's Deputy Sharlene Wilson. The messages made disparaging remarks about the ECG Task Force investigation, the competency of the officers involved, Plaintiff's plans to apply for a job with the San Diego County Sheriff's Department, and about Defendant Jacob Cutting, El Cajon Police Department SWAT officer and Wilson's former husband.

In 2014, Defendants Kai Mandelleh, El Cajon Police Department SWAT officer, and Zeath Sanchez, San Diego County Deputy Sheriff, both detectives with the ECG Task Force, investigated Plaintiff's association with Leon. They believed that Leon sought to extract law enforcement sensitive information from Plaintiff. They called Plaintiff for an interview. He claims that although the ECG Task Force considered him a suspect, they treated him as a witness, because it afforded fewer procedural protections. The interview was recorded. The questions did not relate to leaking sensitive information to Leon, but to Plaintiff's relationship with Wilson. The ECG Task Force concluded that Plaintiff did not pass sensitive law enforcement information to Leon. Plaintiff claims the suspicion was unreasonable to begin with and contrary to evidence, because he had no contact with ECG Task Force members during the relevant time.

After the interview, the ECG Task Force informed the Border Patrol, Plaintiff's employer, that he had been questioned for associating with Leon, but was uncooperative and not forthcoming with information. Border Patrol opened an internal investigation. Although Plaintiff's interview with Mandelleh and Sanchez was recorded, the ECG Task Force refused to provide the recording to the Border Patrol for its investigation. Plaintiff denies that he was uncooperative or less than forthcoming with information.

Plaintiff alleges that Defendants conspired to pursue unfounded allegations against him and passed them to the Border Patrol because Cutting believed it would precipitate the termination of Plaintiff's relationship with Wilson. In pursuit of this goal, Plaintiff alleges that Defendants intentionally circumvented his constitutional due process rights and rights under federal labor laws.

Plaintiff claims that Defendants' false allegations about him caused damage to his professional reputation and career prospects. He believes the allegations were made in retaliation by Cutting, who was jealous, and by Sanchez for pointing out to him he had made an error in collecting evidence.

As a result of this conduct, Plaintiff claims he was removed from the United States Marshal's San Diego Regional Fugitive Task Force ("SDR Task Force"), and would not be assigned to another task force. Plaintiff was informed by his superior that the San Diego Sheriff's Department considered him untrustworthy. Because the Sheriff's Department was a partner in most local task forces, Plaintiff would no longer be assigned. Furthermore, Plaintiff's duties with the Border Patrol were downgraded, and he was passed over for promotion. Plaintiff alleges that because a perjury allegation had been made against him, he is also no longer able to pursue a state law enforcement career or testify as an agent in federal court. Although Plaintiff was able to secure a position as a Criminal Investigator with Immigration and Customs Enforcement, his acceptance was delayed pending the conclusion of Border Patrol's internal investigation. He is pursuing a grievance through the National Border Patrol Council.

On April 14, 2016, Plaintiff filed a complaint against Cutting, Mandelleh and Sanchez alleging (1) violations of his constitutional due process rights under 42 U.S.C. §1983; (2) conspiracy to deny him due process under 42 U.S.C. §1985; and (3)

conspiracy to interfere with federal officer's duties under 42 U.S.C. §1985(1).[1] (Compl. [Doc. 1].) Defendants move to dismiss under Rule 12(b)(6). (Docs. no. 24 & 25.)

## II. Discussion

A motion under Rule 12(b)(6) tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted where the complaint lacks a cognizable legal theory. *Shroyer v. New Cingular Wireless Serv., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (internal quotation marks and citation omitted). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory, yet fails to plead essential facts under that theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

In reviewing a Rule 12(b)(6) motion, the Court must assume the truth of all factual allegations and construe them most favorably to the nonmoving party. *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997, 999 n.3 (9th Cir. 2006). However, legal conclusions need not be taken as true merely because they are couched as factual allegations. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. Fed. Deposit Ins. Corp.*, 139 F.3d 696, 699 (9th Cir. 1998).

### A. Section 1983 Violations

In his first cause of action, Plaintiff alleges that Defendants violated his due process rights[2] under 42 U.S.C. § 1983 by filing false reports and making false

---

[1] Plaintiff also purports to assert a First Amendment retaliation claim. However, he did not raise this claim directly in his complaint and also failed to address Defendants' arguments against such a claim in his opposition. To the extent Plaintiff intends to allege a First Amendment claim, he must articulate it in his amended complaint.

[2] Plaintiff does not specify whether his Section 1983 claim is based on procedural or substantive due process. Defendants assume that he asserts only a procedural due process claim. Nevertheless, liberally construed, the complaint can be read as raising a substantive due process claim based on the proposition that "[e]very citizen has a clearly

4

3:16-cv-903-L-KSC

complaints to the Border Patrol, his employer, resulting in removal from his SDR Task Force assignment and denial of further employment opportunities. (Compl. ¶¶ 44 & 45.) Defendants argue Plaintiff's Section 1983 claim should be dismissed because (1) Plaintiff failed to plead a constitutionally protected property or liberty interest, and (2) Plaintiff was afforded due process. (Sanchez MTD [Doc. 24-1] at 6-8.)

To state a claim under 42 U.S.C. § 1983, a plaintiff must plead that (1) defendants, acting under color of state law, (2) deprived plaintiff of rights secured by the Constitution or federal statutes. *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970). The parties do not dispute that the first prong has been met. (*See* Compl. ¶ 45.) With respect to the second prong, a threshold requirement of a procedural due process claim is a liberty or property interest protected by the Constitution. *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972); *Stiesberg v. State of Cal.*, 80 F.3d 353, 356 (9th Cir. 1996) (internal citation omitted).

    1.  <u>Property Interest</u>

Defendants argue that Plaintiff fails to plead a constitutionally protected property interest. Plaintiff alleges he had a property interest in his SDR Task Force assignment, promotions, and overtime opportunities. (Compl. ¶ 49.)

For a constitutionally cognizable property interest, a plaintiff must show more than "an abstract need or desire" or a "unilateral expectation of it," but "a legitimate claim of entitlement." *Roth*, 408 U.S. at 577. In this regard, property interests are not created by the Constitution. *Id*.

> Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law--rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

---

established due process right not to be subjected to accusations on the basis of false evidence that were deliberately fabricated by the government." (Compl. ¶ 43; Opp'n at 3-4.) Because Defendants did not brief this theory of Plaintiff's case, it is not addressed herein.

5

*Id.*; *see also Town of Castle Rock v. Gonzalez*, 545 U.S. 748, 756 (2005) (existing law, rule, or understanding that makes the conferral of benefit mandatory). While state law defines the underlying substantive interest, "federal constitutional law determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9 (1978) (internal quotations and citations omitted); *Portman v. County of Santa Clara*, 995 F.2d 898, 905 (9th Cir.1993).

Although Plaintiff briefly alludes to having a two year "tenure" in his SDR Task Force assignment (Compl. ¶ 36), he neither identifies nor cites any contractual or statutory provision that might be construed as creating a binding right to or property interest in his assignment or overtime opportunities. Further, "[u]ntil someone actually receives a promotion, or at least a binding assurance of a forthcoming promotion, he cannot claim a property interest in the promotion." *Nunez v. City of Los Angeles*, 147 F.3d 867, 873 (9th Cir. 1998). Based on the foregoing, Plaintiff has failed to allege a constitutionally protected property interest.

### 2. Liberty Interest

Plaintiff alleges two protected liberty interests: (1) his interest in pursuing the occupation of his choice; and (2) his interest in his reputation for honesty and morality. Defendants contend that this is not sufficient because Plaintiff was not terminated. (Compl. ¶ 37; Sanchez MTD at 7:24-25.)

The liberty interest in pursuing one's chosen profession has been recognized where a state seeks permanently to bar an individual from public employment. *See Roth*, 408 U.S. at 573; *Guzman v. Shewry*, 552 F.3d 941, 954 (9th Cir. 2009). Plaintiff has not alleged that he was barred from his chosen profession. To the contrary, he continued employment with the Border Patrol, but on a different assignment. Neither his transfer nor his inability to apply to one particular division imposed a complete bar on his ability to be a public employee nor excluded him from the public officer profession. *See Llamas v. Butte Cmty. Coll. Dist.*, 238 F.3d 1123, 1126, 1128 (9th Cir. 2001) (concluding that a

6

3:16-cv-903-L-KSC

janitor fired from his job and "barred from all future employment with the District" was not deprived of his liberty interest in pursuing the occupation of his choice because he had "not been banned from pursuing a janitorial position [or other public employment] elsewhere"). Accordingly, Plaintiff has not stated a claim for deprivation of a protected liberty interest in pursuing the occupation of his choice.

Plaintiff's second interest is his interest in reputation for honesty and morality. To succeed on a Section 1983 defamation-based claim, Plaintiff must satisfy the "stigma-plus" test. Under the stigma-plus test, a liberty interest is implicated if a charge leveled by the government against an individual impairs that person's reputation for honesty or morality. *Vanelli v. Reynolds Sch. Dist. No. 7*, 667 F.2d 773, 777 (9th Cir. 1982). Due process protections will apply if (1) the accuracy of the charge is contested; (2) there is some public disclosure of the charge; and (3) it is made in connection with the termination of employment or the alteration of some right or status recognized by state law. *Llamas*, 238 F.3d at 1129 (citing *Vanelli*, 667 F.2d at 777-778).

Defendants do not contest that the charge was sufficiently serious to damage Plaintiff's standing or associations in his community or that the accuracy of the charge is contested. Amend other things, Defendants made the charge that Plaintiff "was no longer considered trustworthy." (Compl. ¶¶ 29 & 34.) Plaintiff asserts that this is false. (*Id*. ¶ 30.) The parties dispute whether the charge was publically disclosed and whether disclosure was made "in connection with the termination of employment or the alteration of some right or status recognized by state law." *Llamas,* 238 F.3d at 1129.

As to the former, Plaintiff fails to allege any public disclosure of stigmatizing statements beyond a limited internal dissemination.  Plaintiff alleges that the ECG Task Force "reported to" the Border Patrol that he had been questioned and was uncooperative and not forthcoming. (Compl. ¶ 20.) It is unclear from the complaint how such information was "reported," and any subsequent dissemination or record keeping of the information is unclear. Disclosure of stigmatizing information internally within or between government agencies is not a "public" disclosure. *See Wenger v. Monroe*, 282

F.3d 1068, 1074 n.5 (9th Cir. 2002), as amended on denial of reh'g and reh'g en banc (Apr. 17, 2002) (information disclosed between branches of the military were not "public"); *see also Millman v. Inglish*, 461 Fed. App'x 627, 628 (9th Cir. 2011) (notification of allegations of fraud against other public agencies was not a public disclosure).

Alternatively, Plaintiff does not allege that disclosure was made in connection with the termination of his employment or the alteration of a status or right to which he was entitled by law. Plaintiff was assigned to a different position, at a different location, with different responsibilities. This is analogous to a transfer or reassignment, which does not implicate due process considerations. *See Mustafa v. Clark Cnty. Sch. Dist.*, 157 F.3d 1169, 1179 (9th Cir. 1998) (finding no due process violation where the plaintiff, a teacher, "was not terminated, but rather was transferred," to another school within the same school district); *Learned v. City of Bellevue*, 860 F.2d 928, 933 (9th Cir. 1988) (finding no liberty deprivation where the plaintiff remained employed by the same employer and maintained the same salary, albeit with decreased responsibilities).

Based on the foregoing, Plaintiff fails to allege a constitutionally protected property or liberty interest. Accordingly, Plaintiff's Section 1983 claim is dismissed.

The Court must next consider whether to grant leave to amend. *See Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Rule 15 advises leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal quotation marks and citation omitted).

> In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. – the leave sought should, as the rules require, be freely given.

*Foman v. Davis*, 371 U.S. 178, 182 (1962). Dismissal without leave to amend is not appropriate unless it is clear the complaint cannot be saved by amendment. *See id.* Because it may be possible for Plaintiff to allege a constitutionally protected interest, leave to amend is granted.

### B. Section 1985 Violations

In his second cause of action, Plaintiff alleges that Defendants violated 42 U.S.C. § 1985 when they conspired to violate his rights under § 1983 with intent to cause him professional harm. (Compl. ¶ 54.) In his third cause of action, he alleges that Defendants violated § 1985(1) when they "conspired to interfere with Plaintiff's person or property on account of the discharge of his duties or to prevent him from doing so." (*Id.* ¶ 66.)

Both claims must allege conspiracy, and "must allege facts to support the allegation that defendants conspired together. A mere allegation of conspiracy without factual specificity is insufficient." *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 626 (9th Cir. 1988) (internal citations omitted). Plaintiff's claims are based on the theory that Defendants circumvented his constitutional rights to facilitate retaliation by Cutting, who was jealous, and by Sanchez, because Plaintiff had criticized him for an error in collecting evidence. Plaintiff alleged that Defendants took several acts in furtherance of the conspiracy, including but not limited to acting, agreeing and/or conspiring to unlawfully examine, investigate, threaten plaintiff, make false reports resulting in the removal of Plaintiff from the SDR Task Force, and by procuring false testimony, fabricating evidence, and failing to disclose exculpatory evidence in preparing and presenting reports. (Compl. ¶¶ 58, 60 & 68.) Plaintiff also alleged that (1) Defendants Cutting and Mandelleh were both El Cajon SWAT Police Officers and "know each other" (*id.* ¶ 4(a)), and (2) Defendants Mandelleh and Sanchez were both assigned to the ECG Task Force and jointly interrogated Plaintiff (*id.* ¶¶ 16 & 19). (*See also* Opp'n at 8:14-17; Compl. ¶¶ 14, 19-20, 24-25.) Although he stated that Defendants agreed and conspired, Plaintiff alleged no facts to support a reasonable inference of mutual

9

3:16-cv-903-L-KSC

agreement or understanding among Defendants to retaliate against Plaintiff. The complaint therefore does not sufficiently allege conspiracy.

Finally, Plaintiff's conspiracy claim fails for the same reasons as the underlying Section 1983 claim. *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 935 (9th Cir. 2012) (allegations insufficient to support a Section 1983 violation preclude a conspiracy claim predicated upon the same allegations) (internal quotation marks and citation omitted).

The Court therefore dismisses Plaintiff's Section 1985 claims. Because it appears that Plaintiff may be able to allege additional facts in support of his Section 1985 claims, leave to amend is granted. *See Foman*, 371 U.S. at 182.

### III. Conclusion and Order

For the foregoing reasons, Defendants' motions to dismiss are granted with leave to amend. If Plaintiff wishes to file an amended complaint, he must do so no later than April 23, 2018. Defendants shall file a response, if any, to the first amended complaint within the time set forth in Federal Rule of Civil Procedure 15(a)(3).

**IT IS SO ORDERED.**

Dated: March 22, 2018

Hon. M. James Lorenz
United States District Judge