UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS BALDWIN,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>JACOB CUTTING et al.,<br><br>　　　　　　　　　Defendants. | Civil No.: 3:16-CV-903-L-KSC<br><br>**ORDER GRANTING DEFENDANTS' JOINT MOTION TO DISMISS AMENDED COMPLAINT** |

Pending before the Court in this civil rights action is Defendants' joint motion to dismiss for failure to state a claim. (Doc. no. 44.) The motion is fully briefed and submitted without oral argument pursuant to Civil Local Rule 7.1.d.1. For the reasons which follow, Defendants' motion is granted without leave to amend.

I. **Background**

According to the allegations in the first amended complaint ("FAC"), Plaintiff was employed by the United States Border Patrol ("Border Patrol"). (FAC ¶ 7.) In the course of his employment, he befriended San Diego County Sheriff's Deputy Jessica Leon. (*Id.* ¶ 13.) Subsequently, Leon's relative David William Centrone became a suspect in an investigation of the West Coast Crips, commenced by the East County Gang Task Force

1

("ECG Task Force"). (*Id.* ¶ 16.) The ECG Task Force believed that Leon leaked information about the investigation to Centrone. (*Id.* ¶ 17.) They tapped her mobile phone. (*Id.*)

Because of the wiretap, the ECG Task Force members had access to text messages between Plaintiff and Leon. (FAC ¶ 17.) Leon was Plaintiff's confidante about his romantic relationship with San Diego County Sheriff's Deputy Sharlene Wilson, the ex-wife of Defendant Jacob Cutting, a SWAT officer at the El Cajon Police Department. (*Id.* ¶ 13.) The wiretap revealed a number of text messages which "dealt heavily with the relationship between [Plaintiff] and Wilson." (*Id.* ¶ 17.) The messages also "made disparaging remarks about the investigation and those conducting it, implying their incompetence," "discussed [Plaintiff's] plans to apply for a job with the San Diego Sheriff's Department," and "mentioned Cutting in very negative tones[, including] how Cutting was threatening [Plaintiff] and how [Plaintiff] was planning on dealing with the situation . . .." (*Id.* ¶¶ 17, 18.)

Defendants Kai Mandelleh, also a SWAT officer with El Cajon Police Department,[1] and Zeath Sanchez, a San Diego County Deputy Sheriff, both detectives with the ECG Task Force, investigated Plaintiff's association with Leon to find out if she was the leak, and if she obtained any relevant information from Plaintiff. (FAC ¶¶ 17, 18, 22.) Plaintiff claims the suspicion was unreasonable, because he had no contact with ECG Task Force members during the relevant time, and therefore would have had no information to give Leon. (*Id.* ¶ 32.) Mandelleh and Sanchez interviewed Plaintiff ostensibly about the leak; however, they did not ask any questions about that, but instead showed Plaintiff text messages he had exchanged with Leon that "were personal in nature, pertaining strictly to [Plaintiff's] relationship with . . . Wilson." (*Id.* ¶¶ 19, 26.) Sanchez and Mandelleh concluded that Plaintiff "did not provide sensitive information to

---

[1] Cutting and Mandelleh allegedly knew each other. (FAC ¶ 4.)

. . . Leon and . . . he became upset [at the interview] because the Detectives had intercepted personal information about him." (*Id.* ¶ 28.)

After the interview, the ECG Task Force reported to the Border Patrol, Plaintiff's employer, that he was uncooperative and not forthcoming in the interview. (*Id.* ¶¶ 20, 29.) According to Plaintiff, this resulted in a Border Patrol internal investigation. Plaintiff denied he was uncooperative or less than forthcoming. (*Id.* ¶ 30.) His interview with Defendants was recorded, but the ECG Task Force refused to provide the recording to the Border Patrol for its investigation, leading Plaintiff to contend the failure to produce it was to make it more difficult to counter Defndants' report. (*Id.* ¶¶ 24, 29.)

As a result of Defendants' report, Plaintiff was transferred to another Border Patrol station with downgraded duties, he was no longer able to be assigned to other task forces per the ECG Task Force request, and, because the San Diego County Sheriff's Office as a whole no longer considered him trustworthy, Plaintiff would no longer be considered for other task force assignments. (FAC ¶¶ 34, 36, 37.) Plaintiff was removed from the United States Marshal's San Diego Regional Fugitive Task Force. (*Id.* ¶¶ 29, 34, 35.) He further alleges he is no longer able to pursue a state law enforcement career or testify as an agent in federal court. (*Id.* ¶ 38.) Although Plaintiff was subsequently able to secure a position as a Criminal Investigator with Immigration and Customs Enforcement, he claims his acceptance was delayed pending the conclusion of Border Patrol's investigation, which exonerated him. (*Id.* ¶ 41.) He is pursuing a grievance through the National Border Patrol Council. (*Id.* ¶ 40.)

Plaintiff alleges that Defendants pursued unfounded allegations against him at Cutting's request, because he was jealous of Plaintiff's relationship with Wilson, and by Sanchez, because Plaintiff had pointed out errors in collecting evidence in Leon's investigation. (FAC ¶ 31; *see also* Opp'n at 5.) Plaintiff claims Defendants' goal was to damage his professional reputation and career prospects, as well as precipitate the termination of his relationship with Wilson.

In his amended complaint against Cutting, Mandelleh and Sanchez, Plaintiff alleges violations of his constitutional due process and first amendment rights under 42 U.S.C. § 1983. Defendants move to dismiss under Rule 12(b)(6).

**II.   Discussion**

A motion under Rule 12(b)(6) tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted where the complaint lacks a cognizable legal theory. *Shroyer v. New Cingular Wireless Serv., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (internal quotation marks and citation omitted). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory, yet fails to plead essential facts under that theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

In reviewing a Rule 12(b)(6) motion, the Court must assume the truth of all factual allegations and construe them most favorably to the nonmoving party. *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997, 999 n.3 (9th Cir. 2006). However, legal conclusions need not be taken as true merely because they are couched as factual allegations. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. Fed. Deposit Ins. Corp.*, 139 F.3d 696, 699 (9th Cir. 1998).

Plaintiff brings two causes of action against Defendants under 42 U.S.C. § 1983. To state a claim, Plaintiff must plead that (1) Defendants, acting under color of state law, (2) deprived Plaintiff of rights secured by the Constitution or federal statutes. *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

**A.   Due Process**

In his first cause of action Plaintiff alleges that Defendants violated his due process rights by making a false report to his employer, which led to the impairment of his reputation for honesty and morality under the "stigma-plus" test. Defendants counter, among other things, that Plaintiff failed to plead sufficient facts to meet the test.

4

A threshold requirement of a procedural due process claim is a liberty or property interest protected by the Constitution. *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972). Plaintiff alleges infringement of his liberty interest. (FAC ¶ 43; Opp'n at 7 n.5.) A liberty interest is implicated in the employment context "if the charge impairs a reputation for honesty or morality." *Tibbetts v. Kulongoski,* 529 F.3d 529, 535 (9th Cir. 2009). However, to state a claim, Plaintiff must allege more. *See Wenger v. Monroe,* 282 F.3d 1068, 1074 (9th Cir. 2002), as amended on denial of reh'g and reh'g en banc (Apr. 17, 2002).

> [D]ue process protections apply only if a plaintiff is subjected to "'stigma plus'; i.e., if the state makes a charge against [a plaintiff] that might seriously damage his standing and associations in the community," and "1) the accuracy of the charge is contested, 2) there is some public disclosure of the charge, and 3) it is made in connection with the termination of employment or the alteration of some right or status recognized by state law.

*Id.* (quoting *Llamas v. Butte County College Dist.,* 238 F.3d 1123, 1129 (9th Cir. 2001).

In *Wenger*, the plaintiff, a colonel in California National Guard, was being considered for promotion when he spoke as a guest speaker at a dining-in event hosted by the Guard. 282 F.3d at 1070-71. After the event, some of the attendees stayed for adult entertainment. When Col. Wenger noticed this, he immediately left. The Guard initiated an investigation into the post-event entertainment. Pending the investigation, it suspended all favorable personnel actions, including Wenger's promotion, which included placing a "flag" on Wenger's file, and requesting the return of his personnel file from the United States Department of the Army, which was to recognize his promotion. The flag on Wenger's file triggered the Army to commence its own inquiry. Because Wenger was also a lecturer at the Army War College, the Guard informed the college of the flag, and the college informed Wenger that he would not be invited back. *Id.* at 1070-71. Due to the ongoing investigation, and the Guard's "up or out" policy, Wenger was forced into retirement before his consideration for promotion could resume. *Id.* at 1071 & n.2.
5

3:16-cv-903-L-KSC

Wenger filed an action against the Guard arguing it violated his due process rights by impairing his liberty interest in good name and reputation. *Id.* at 1073. The court analyzed the claim under the "stigma plus" test. *Id.* at 1074. It found that the consequences of the Guard's investigation did not amount to a disciplinary action or termination against him, and he was retired not due to the investigation, but "in due course as required by law." *Id.* The Guard's communications with the Army and the Army War College about the flag on Wenger's file did not amount to public disclosure, because the disclosures were made to other branches of the military and not to the public, and were not "made in connection with termination of Wenger's employment, or the alteration of some right recognized by state law." *Id.* n.5. Accordingly, the court concluded that Wenger did not establish a violation of his due process rights. *Id.* at 1074.

The consequences of Defendants' actions in the pending case are less severe than those suffered by Wenger. *See Learned v. City of Bellevue,* 860 F.3d 928, 933 (9th Cir. 1988) ("The facts in this case are not nearly as egregious . . .."). Like Plaintiff's task force assignments here, Wenger lost the ability to participate in lucrative special assignments such as teaching at the Army War College. With retirement, however, Wenger also lost all opportunities for advancement. On the other hand, Plaintiff remained employed by the Border Patrol, albeit at another station with reduced duties. (FAC ¶37.) A transfer, even with reduced duties, does not rise to the level of a due process violation. *Learned,* 860 F.2d at 930, 933 (no violation where plaintiff transferred to another division with reduced responsibilities); *see also Llamas,* 238 F.3d at 1128 (a bar from any future employment with a school district not sufficient to state a claim because it allowed for employment elsewhere); *Mustafa v. Clark County Sch. Dist.,* 157 F.3d 1189 (9th Cir. 1998) (no violation where plaintiff transferred to another school in the same school district). In addition to continued employment with the same agency, Plaintiff's application to work as a Criminal Investigator with Immigration and Customs Enforcement was successful. (FAC ¶41.)

Nevertheless, Plaintiff contends Defendants' disclosure caused an "alteration of some right or status recognized by state law." *Wenger,* 282 F.3d at 1074. He asserts that as a law enforcement officer he must be able to testify as a witness, and that he is now less effective. For example, he points out that federal prosecutors have a policy to ask law enforcement witnesses "whether they ever have been accused of perjury or told they were considered untrustworthy." (FAC ¶38.) He argues his status has been altered because of the "reluctance of prosecutors to work with" him based on the false accusation of untrustworthiness. (Opp'n at 10.) He also argues that the fact that he would have to disclose he is considered untrustworthy has rendered him less desirable as an agent. Accepting Plaintiff's contenntion at face value, he has not shown that his desirability as an agent or effectiveness as a witness is a "right or status recognized by state law," as required by the "stigma plus" test. *See Wenger,* 282 F.3d at 1074. This alone is sufficient to dismiss Plaintiff's due process claim.

Alternatively, the claim is dismissed because Plaintiff has not alleged the stigmatizing charge was publicly disclosed. He alleges internal dissemination of the statements, *i.e.*, that the ECG Task Force "reported to the Border Patrol that he had been questioned and was uncooperative and not forthcoming." (FAC. ¶20.) However, disclosure within or between government agencies is not a public disclosure. *Wenger*, 282 F.3d at 1074 n.5.

Plaintiff also argues he made a public disclosure to the National Border Patrol Council when he filed a grievance. (FAC ¶ 40; Opp'n at 9.) He suggests that because the National Border Patrol Council is not a governmental agency his disclosure was public. (Opp'n at 9.) The alleged disclosure, however, was not public because "due process rights are not implicated by [one's] own disclosures." *Llamas*, 238 F.3d at 1130-31.

Next, Plaintiff suggests that his self-disclosure of "the effect of Defendants' accusations on his own cases" (Opp'n at 9) is a public disclosure. These disclosures also do not meet the "stigma plus" test because they were made by Plaintiff himself within the

pertinent government agencies for a limited purpose. *See Llamas*, 238 F.3d at 1130-31; *Wenger*, 282 F.3d at 1074 n.5.

Finally, Plaintiff contends that "a public disclosure occurs when, as here, the interagency sharing of information stigmatizes the plaintiff throughout the federal government." (Opp'n at 9.) He cites two cases from the Seventh Circuit: *Larry v. Lawler*, 605 F.2d 954, 958 (7th Cir. 1978), and *Hannon v. Turnage*, 892 F.2d 653, 660 (7th Cir. 1990).

In *Larry*, the plaintiff sued the Civil Service Commission because it had published false statements regarding his use of intoxicating beverages, and rated him "ineligible" for federal employment, which resulted in a bar from all federal employment for three years. *Larry*, 605 F.2d at 955-56. These facts led the court to determine plaintiff had an actionable claim under the "stigma plus" test. *Id*. at 959. *Larry* is distinguishable because Plaintiff continues to work as a law enforcement officer for the federal government.

*Hannon* noted that *Larry* was an exception to the general rule that "there is generally no abridgement of a liberty interest when the government circulates information among a limited number of agencies for a specified purpose." *Hannon*, 892 F.2d at 660. The court did not find that exception to apply where the Veterans Administration shared with the Office of Personnel Management the reason for plaintiff's dismissal. *Id*. As in *Hannon*, Defendants' disclosures were to related government agencies rather than the public. *Hannon* and *Larry* therefore do not support Plaintiff's argument.

For the foregoing reasons, Plaintiff does not state a claim for violation of his due process rights under the "stigma-plus" test. The Court next considers whether to grant leave to amend. *See Doe v. United States,* 58 F.3d 494, 497 (9th Cir. 1995). Rule 15 advises leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). "This policy is to be applied with extreme liberality." *Eminence Capital, LLC*

8

3:16-cv-903-L-KSC

*v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003)(internal quotation marks and citation omitted).

> In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. – the leave sought should, as the rules require, be freely given.

*Foman v. Davis*, 371 U.S. 178, 182 (1962). Dismissal without leave to amend is not appropriate unless it is clear the complaint cannot be saved by amendment. *See id.*

Plaintiff was previously granted leave to amend his due process claim because it appeared possible he could allege a constitutionally protected liberty interest. (Order Granting Defendants' Motions to Dismiss (doc. no. 37) at 9.) His amended complaint did not bear this out. The Court declines leave to amend the same claim again. *See Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) ("A district court's discretion to deny leave to amend is particularly broad where the plaintiff has previously amended.") (internal quotation marks and citation omitted); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009). Plaintiff's first cause of action for violation of his due process rights is therefore dismissed without leave to amend.

### B.  First Amendment

In his second cause of acton Plaintiff alleges that Defendants violated his first amendment right against retaliation for protected speech. *See Hagen v. City of Eugene,* 736 F.3d 1251, 1257 (9th Cir. 2013.) To determine whether Plaintiff can state a claim, the Court must consider the following factors:

> (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Eng v. Cooley,* 552 F.3d 1062, 1070 (9th Cir. 2009)(brackets in original)(quoting *Pickering v. Bd. of Educ.,* 301 U.S. 563, 568 (1968)).

Among other things, Defendants argue that the speech for which Plaintiff was allegedly retaliated did not address a public concern. Plaintiff bears the burden on this issue. *Eng,* 552 F.3d at 1070. "The public concern inquiry is purely a question of law . . . ." *Id.* "If the speech in question does not address a matter of public concern, then the speech is unprotected . . . ." *Id.* at 1070-71. If Plaintiff cannot prevail on this issue, he cannot prevail on his first amendment claim. *See Dahlia v. Rodriguez,* 735 F.3d 1060, 1067 n.4 (9th Cir. 2013) (*en banc*) ("all five factors are independently necessary" and "failure to meet any one of them is fatal to the plaintiff's case").

> Speech involves a matter of public concern when it can fairly be considered to relate to any matter of political, social, or other concern to the community. But speech that deals with individual personnel disputes and grievances and that would be of no relevance to the public's evaluation of the performance of governmental agencies is generally not of public concern. Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record.

*Id.* at 1070 (internal quotation marks and citations omitted).

Plaintiff maintains that the speech for which he was retaliated addressed a matter of public concern because it "discuss[ed] in general terms the hypothetical bases for a criminal investigation which might implicate . . . Leon . . . ." (Opp'n at 13, *see also* FAC ¶ 56 ("Plaintiff spoke on a matter of public concern insofar as his private communications were addressed to a friend and law enforcement colleague who has some questions and concerns about her possible status.").)

Plaintiff's argument is contradicted "by the content, form, and context [of his statements], as revealed by the whole record." *Dahlia,* 735 F.3d at 1067 n.4. Plaintiff alleges that Sanchez and Mandelleh interviewed him at Cutting's request (*see* Opp'n at 5 (Mandelleh and Sanchez "acceded to . . . Cutting's desire to retaliate against Plaintiff")), and retaliated against him because "Cutting was jealous of the relationship between

10

[Plaintiff] and Wilson," "Cutting believed it would precipitate the termination of [Plaintiff's] relationship with Wilson," and "Sanchez became angry when [Plaintiff] pointed out Sanchez's error in the collection of evidence and possession of personal text messages." (FAC ¶ 31.)

Plaintiff's statements about his relationship with Wilson are undoubtedly personal in nature. His statements about the impropriety of Sanchez' possession of purely personal text messages unrelated to the leak investigation and any other criticism of the evidence collection in the investigation are also personal in nature, because Plaintiff's interview originated in Cutting's desire to interfere in Plaintiff's relationship with Wilson. Plaintiff has alleged no facts to indicate that the evidence collection errors, including failure to observe minimization rules, were present in any other investigations but his. He claims he was sigled out, and violations committed against him, because of Cutting's jealousy. His statements do not amount to a matter of public concern such as disclosing an improper law enforcement practice or policy, but to a personal matter. Accordingly, Plaintiff has not alleged that he was retaliated against for speaking on matters of public concern.

For the foregoing reasons, Plaintiff has not stated a claim for violation of his first amendment rights. *See Dahlia,* 735 F.3d at 1067 n.4. As with the due process claim, leave to amend the first amendment claim is not warranted despite the liberal policy favoring amendment. *See* Fed. R. Civ. P. 15(a)(2); *Eminence Capital,* 316 F.3d at 1051. Plaintiff was already granted leave to more fully articulate his first amendment claim in light of Defendants' argument that Plaintiff's speech was not protected. (*See* doc. no. 37 at 4 n.1; Mem. of P.&A. In Supp. of Mot. to Dismiss Compl. (doc. no. 24-1) at 8-9 (motion to dismiss the initial complaint).) As Plaintiff has been unable to sufficiently amend this claim, and it does not appear possible, in light of the facts already alleged, that Plaintiff could allege speech on matters of public concern, leave to amend is denied as futile. *See Salameh*, 726 F.3d 1133; *Zucco Partners,* 552 F.3d at 1007.

### III. Conclusion and Order

Defendants' motion to dismiss is granted without leave to amend.

**IT IS SO ORDERED.**

Dated: December 12, 2018

_____
Hon. M. James Lorenz
United States District Judge